Lynne M. Kizis, *Pro Hac Vice*
lkizis@wilentz.com
Kevin P. Roddy, CA State Bar No. 128283
kroddy@wilentz.com
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone: (732) 855 6402

Kimberly Beck, *Pro Hac Vice*
kim@becklawcenter.com
BECK LAW CENTER
201 E. 5TH Street, Suite 1900
Cincinnati, Ohio
Telephone: (888) 434-2912

Shehnaz M. Bhujwala, CA State Bar No. 223484
bhujwala@boucher.la.com
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367-4903
Telephone: (818) 340-5400
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PARKER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME CORP., a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No. 3:24-cv-00916-H-BLM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.**<br><br>**Hearing Date:** **August 19, 2024**<br>**Hearing Time:** **10:30 a.m.**<br>**Courtroom:** **12A**<br>Action Filed: May 23, 2024 |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 1

    A.    NEUROPSYCHIATRIC INJURIES RICHARD PARKER SUFFERED
           DUE TO SINGULAIR ............................................................................ 1

    B.    MONTELUKAST CAUSES NEUROPSYCHIATRIC ADVERSE
           EFFECTS INCLUDING DEPRESSION, ANXIETY, SUICIDALITY
           AND SUICIDE ATTEMPTS .................................................................... 2

    C.    DEFENDANTS' FAILURE OT TIMELY PROVIDE FULL AND
           ADEQUATE LABELING ABOUT THE SIGNIFICANT
           NEUROPSYCHIATRIC ADVERSE EFFECTS OF MONTELUKAST
           CAUSED PLAINTIFF SUBSTANTIAL AVOIDABLE HARM ........... 3

    D.    DR. HEALY'S SPECIFIC CAUSATION OPINION ............................. 3

III. ARGUMENT ...................................................................................................... 4

    A.    DR. HEALY IS EMINENTLY QUALIFIED TO OPINE ON DRUG
           INDUCED NEUROPSYCHIATRIC INJURY, HE BASED HIS
           OPINION ON SUFFICIENT FACTS, AND UTILIZED ACCEPTED
           METHODOLOGY .................................................................................. 7

    B.    DR. HEALY EMPLOYED DIFFERENTIAL DIAGNOSIS IN A
           RELIABLE WAY TO DETERMINE THE CAUSE OF PLAINTIFF'S
           INJURIES .......................................................................................... 12

    C.    DR. HEALY'S PASSING COMMENTS ON THE EFFICACY OF
           SINGULAIR®/MONTELUKAST AND CONSIDERATION OF
           PLAINTIFF'S LIPOMAS WERE NOT INTENDED TO BE EXPERT
           CAUSATION OPINIONS OFFERED IN THIS CASE ...................... 16

Case No. 3:24-cv-00916-H-BLM

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF
DAVID HEALY M.D.

#14540270.1

IV. CONCLUSION ............................................................................................... 17

Case No. 3:24-cv-00916-H-BLM

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF
DAVID HEALY M.D.

#14540270.1

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
 738 F.3d 960 (9th Cir. 2013) ........................................................5

*Clausen v. M/V NEW CARISSA*,
 339 F.3d 1049 (9th Cir. 2003) ......................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 43 F.3d 1311 (9th Cir. 1995) ........................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ............................................................4, 5, 6

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).......................17

*Estate of Barabin v. AstenJohnson, Inc.*,
 740 F.3d 457 (9th Cir. 2014) ........................................................6

*In re Novatel Wireless Sec. Litig*,
 846 F. Supp. 2d 1104 (S.D. Cal. 2012)...........................................11

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*,
 424 F. Supp. 3d 781 (N.D. Cal. 2020)..........................................5, 11

*Messick v. Novartis Pharms. Corp.*,
 747 F.3d 1193 (9th Cir. 2014) ...................................................5, 6

*Murray v. Southern Route Maritime SA*,
 870 F.3d 915 (9th Cir. 2017) ........................................................5

*Wendell v. GlaxoSmithKline LLC*,
 858 F.3d 1227 (9th Cir. 2017) ................................................ passim

### Rules

Federal Rule of Evidence 702................................................4, 6, 17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF
DAVID HEALY M.D.

#14540270.1

# I.    INTRODUCTION

This is a personal injury, products liability action brought by Richard Parker for the neuropsychiatric injuries he sustained due to taking Singulair®/Montelukast from 2016-2021 for his asthma and allergies. His claims were originally filed in Spencer Bueno et al. vs. Merck & Co, Inc. et al, Case No. 3:22-cv-00522-H-BLM, but plaintiff consented to defendants' request to sever and this matter was filed separately.

## II.    FACTUAL BACKGROUND

### A.    NEUROPSYCHIATRIC INJURIES RICHARD PARKER SUFFERED DUE TO SINGULAIR®

Richard Parker's life significantly and negatively altered course after he was first prescribed Singulair® on January 5, 2016 for his asthma and allergies. Despite work he enjoyed and a new relationship he was excited about, he was puzzled by urges to drive off the road into a tree weeks after starting Singulair®/montelukast. Several weeks later, amid mounting anxiety and depression he had a serious collision snowboarding on February 22, 2016 that he told medical professionals and his father at the time was not an accident. This first of several suicide attempts left Richard with incapacitating pain and injuries that ultimately resulted in major surgery on October 12, 2016. Significant pain, disability, depression, anxiety, and additional suicide attempts would follow. See Report of David Healy, M.D. Decl. of Susan Vargas, Exhibit A ("Healy Report").

Defendants blame numerous other factors for Richard Parker's repeated suicide attempts and resulting injuries, including thinly veiled disapproval of his surfing lifestyle, but one compelling factor they cannot explain away is that when his prescribing physician Dr. Reddy first saw him after the black box warning was put on Singulair®/montelukast, she took him off the medication, and thereafter his

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

neuropsychiatric injuries and his life began to incrementally improve.[1]

Richard Parker's suicidality, suicide attempts, and resulting injuries occurred only while he took Singulair®/montelukast. Movants blame factors that existed before, during and after this period so their alleged role in causing his injuries is not logical. Issues with his religious family existed[2] before and after his use of Singulair®/montelukast and did not drive him to suicidality. Neither did his use of marijuana before and after induce suicidality.[3] Richard was an extreme athlete and had trauma and injuries before and after the period of time on Singulair® and such did not cause him to attempt to end his life.

Richard Parker's alleged substance abuse is, unfortunately, a foreseeable complication of the opioids given him to treat the injuries from the snowboard collision and is therefore causally related to his Singulair® use and its adverse consequences to him, and should not exonerate movants. There is no documentation of such trouble outside of the difficult period in his life in issue in this case, and movant at best relies upon the testimony of an estranged uncle in that regard. Decl. of Susan Vargas, Exhibit A, Healy Report.

**B.** **MONTELUKAST CAUSES NEUROPSYCHIATRIC ADVERSE EFFECTS INCLUDING DEPRESSION, ANXIETY, SUICIDALITY AND SUICIDE ATTEMPTS**

This issue is comprehensively addressed in the contemporaneously filed

---

[1] Movants' claims that Parker took the drug until October 2021 are incorrect and likely based upon auto-refills and a script from a physician who was not regularly treating Parker's asthma and allergies.

[2] After moving in with his very religious parents to attempt to recover from his crippling pain and injuries, it is not surprising he would report the family religious friction to his therapist Dr. Cessna in 2017.

[3] Marijuana use has been legal in California since Proposition 64 passed November 8, 2016.

#14540270.1

Memorandum of Points and Authorities in Opposition to the Motion to exclude or limit the opinion testimony of Dr. Dima Qato.

### C.    <u>DEFENDANTS' FAILURE TO TIMELY PROVIDE FULL AND ADEQUATE LABELING ABOUT THE SIGNIFICANT NEUROPSYCHIATRIC ADVERSE EFFECTS OF MONTELUKAST CAUSED PLAINTIFF SUBSTANTIAL AVOIDABLE HARM</u>

Despite a lifetime of asthma, Richard Parker was not given Singulair® until January 2016. By this time, defendants had mounting reports of serious adverse neuropsychiatric events. Defendants' liability is comprehensively addressed in the contemporaneously filed Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment.

### D.    <u>DR. HEALY'S SPECIFIC CAUSATION OPINION</u>

Dr. Healy, a medical doctor and psychiatrist with extensive experience with drug induced neuropsychiatric injuries including suicidality was engaged to examine Richard Parker and review the evidence in the case including ten (10) depositions and in excess of one thousand (1000) pages of medical records, and render an opinion as to whether Mr. Parker sustained neuropsychiatric injury due to his use of Singulair®/Montelukast. He provided a thirty-five (35) page report setting forth in detail his review of the matter and conducting a differential diagnosis which concluded "to a reasonable degree of medical certainty, Mr. Parker's use of Singulair® starting from January 2016 caused him to escalating anxiety, suicidality, escalating pain, neuropsychiatric episodes that were misdiagnosed, significant insomnia, memory problems.." Decl. of Susan Vargas, Exhibit A, Healy Report, p. 24. Movant seeks to exclude or limit Dr. Healy's testimony and opinions.

#14540270.1

# III.   ARGUMENT

Federal Rule of Evidence 702 governs expert testimony. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to the Federal Rules of Evidence, the district court judge must ensure that all admitted expert testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Defendants do not contest that the opinions of Dr. Healy are relevant; the only question, therefore, is whether they are reliable. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).

To assist courts with this task, the Supreme Court has listed several non-exclusive factors that judges can consider when determining whether to admit expert testimony under Rule 702. *See Daubert*, 509 U.S. at 593-95. These include: "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Daubert II*, 43 F.3d at 1316. The Court also considers whether experts are testifying "about matters growing naturally" out of their own independent research, or if "they have developed their opinions expressly for purposes of testifying." *Id.* at 1317. These factors are illustrative, and they are not all applicable in each case. *Id.* The

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

inquiry is "flexible," *Daubert*, 509 U.S. at 594, and "Rule 702 should be applied with a 'liberal thrust' favoring admission," *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)(*quoting Daubert*, 509 U.S. at 588); *Wendell*, 858 F.3d at 1232.

The focus of the reliability inquiry is on the principles and methodology an expert uses in forming the opinions rather than the expert's conclusions. In conducting the reliability analysis, the court must also consider whether, for a given conclusion, "there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). In short, both unsound methods and unjustified extrapolations from existing data can require exclusion of an expert's testimony. The Ninth Circuit has placed great emphasis on *Daubert's* admonition that a district court should conduct the analysis "with a 'liberal thrust' favoring admission." *Messick*, 747 F.3d at 1196 (*quoting Daubert*, 509 U.S. at 588); *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*, 424 F. Supp. 3d 781, 790 (N.D. Cal. 2020).

Accordingly, the Ninth Circuit has emphasized that the gatekeeping function is meant to "screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Murray v. Southern Route Maritime SA*, 870 F.3d 915, 925 (9th Cir. 2017); *Wendell*, 858 F.3d at 1237; *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*, 424 F. Supp. 3d at 790.

The focus of the district court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. As it was explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the court's "task . . .

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995); *Wendell*, 858 F.3d at 1232.

The Ninth Circuit found the district court looked too narrowly at each individual consideration, without taking into account the broader picture of the experts' overall methodology. It improperly ignored the experts' experience, reliance on a variety of literature and studies, and review of plaintiff's medical records and history, as well as the fundamental importance of differential diagnosis by experienced doctors treating troubled patients. *Wendell*, 858 F.3d at 1233.

When an expert relies on the methodology of differential diagnosis, he first assumes the pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded. We have recognized that this method of conducting a differential diagnosis is scientifically sound. *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057-58 (9th Cir. 2003); *Wendell*, 858 F.3d at 1234. The expert does not need to eliminate all potential causes; "[i]t is enough that a [proposed cause] be a substantial causative factor." *Messick*, 747 F.3d at 1199; *Wendell,* 858 F.3d at 1234. Moreover, when an expert establishes causation based on a differential diagnosis, the expert may rely on his or her extensive clinical experience as a basis for ruling out a potential cause of the disease. *Messick, 747 F.3d* at 1198.

Where, as here, the experts' opinions are not the "junk science" Rule 702 was meant to exclude, *see Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system—"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"—to "attack[] shaky but admissible evidence," *Daubert*, 509 U.S. at 596; *Wendell*, 858 F.3d

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

at 1237.

A. **DR. HEALY IS EMINENTLY QUALIFIED TO OPINE ON DRUG INDUCED NEUROPSYCHIATRIC INJURY, HE BASED HIS OPINION ON SUFFICIENT FACTS, AND UTILIZED ACCEPTED METHODOLOGY**

Dr. Healy is overwhelmingly qualified to render an opinion on whether Richard Parker sustained drug induced neuropsychiatric injuries from montelukast. Dr. Healy is a medical doctor, with the UK equivalent of an MD, PhD and Board Certification in Psychiatry. He has served as a professor of psychiatry in the UK and Canada. He has extensive inpatient and outpatient clinical experience. He has authored numerous books, book chapters, and published hundreds of peer reviewed articles. His opinions have been sought by numerous government entities, and in civil and criminal cases in numerous countries. See Dr. David Healy curriculum vitae, Declaration Dr. David Healy MD Exhibit C.

Of particular significance to both his unique qualifications to assist the trier of fact in this case and his experience with relevant methodology, a substantial portion of Dr. Healy's professional career has been devoted to drug induced toxicity and neuropsychiatric injuries including suicidality in clinical, academic, research, and consulting settings. See Declaration Dr. David Healy MD ¶2. He was asked to render expert opinions on drug induced suicides in government settings. He prepared reports for the UK government on 50 LSD cases. He participated in approximately 40 coroner's inquests in the UK, Australia, and Ireland where he rendered an opinion that the following drugs caused suicide: paroxetine, fluoxetine, sertraline, citalopram, escitalopram, venlafaxine, mirtazapine, doxycycline, isoretinoin, finasteride, and risperidone. He was approached by government entities in an additional 100 cases where his opinion was that the drug did not likely cause or contribute to suicide. See

#14540270.1

Declaration Dr. David Healy MD ¶3. He was further consulted to evaluate and render opinions in approximately 50 civil and criminal cases that the following drugs induced suicide, homicide, or assault and testified at trial with respect to: olanzapine, risperidone, citalopram, duloxetine, fluoxetine, paroxetine, sertraline, and venlafaxine. Healy Declaration para 4. During decades of clinical practice, he assessed and managed thousands of patients for the neuropsychiatric effects of drug toxicity. Declaration Dr. David Healy MD ¶5.

In 1990, Dr. Healy encountered clinically two male patients who became suicidal on fluoxetine (Prozac), then a recently released serotonin reuptake inhibitor (SSRI). Using standard methods of establishing causality in the case of drug-induced adverse events, he drafted his analysis, which was published in a peer reviewed journal in 1991. Creaney W, Murray I, Healy D Antidepressant induced suicidal ideation. Human Psychopharmacology 1991, 6, 329-332. He presented this information to the drug's manufacturer Lilly who denied any indication of this effect in clinical trials, and that they had no idea how Prozac could be causing this problem. He went on to present his findings academically, conduct further investigation, author and publish numerous peer-reviewed papers, consult in numerous cases, and become recognized as a global expert in SSRI induced suicidality. See also Healy D (1994). The fluoxetine and suicide controversy CNS Drugs 1 223-231; Healy D Let Them Eat Prozac, New York University Press, New York 2004. Declaration Dr. David Healy MD ¶7.

Dr. Healy's work included regulatory advocacy for drug labeling. He testified or submitted evidence at two FDA hearings and advocated for a Black Box Warning on antidepressants for suicide and violence. Further, he petitioned the EMA and FDA regarding adverse effects that linger after the drug is removed, namely post-SSRI Sexual Dysfunction, which led to its inclusion in drug labeling in Europe. Declaration Dr. David Healy MD ¶8.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

Through the years he acquired a broad base of knowledge of neuropsychiatric adverse events from drugs. Through the RxISK.org adverse event reporting website, he assessed on average one neuropsychiatric effect per day, so over 4,000 neuropsychiatric adverse events since RxISK began, covering a wide range of drugs including antibiotics, antidepressants, antipsychotics, PPI's and Singulair®. Declaration Dr. David Healy MD ¶9.

Dr. Healy employed the same knowledge, experience and methodology he developed throughout decades of clinical, academic, and consulting work regarding neuropsychiatric adverse events from SSRIs and other drugs to evaluate several Singulair®/montelukast cases. Declaration Dr. David Healy MD ¶10. He based his opinions on accepted methodology of differential diagnosis and standard clinical causality methods such as Challenge-Dechallenge-Rechallenge. Defendants do not seem to contest propriety of these methodologies but rather contest their application as further discussed below. Regarding the propriety of the methodology, see FDA guidance issued in 2005 on Good Pharmacovigilance Practice and another on establishing links between treatments and adverse events that advocate the methods Dr. Healy employed in this case. Food and Drug Administration. Guide for Industry. Good pharmacovigilance practices. US Dept of Health and Human Services, FDA-2004-D-0041 March 2005 and Food and Drug Administration. Conducting a clinical safety review of a New Product Application. US Dept of Health and Human Services, February 2005. See Declaration Dr. David Healy MD ¶11, Exhibit A and B.

In addition to approaching this case with decades of relevant experience in drug induced toxicity and neuropsychiatric injury, Dr. Healy was already familiar with montelukast and its effects. He managed a Montelukast case a decade ago that was not related to litigation. He hosted a series of posts on RxISK.org about efforts to get warnings put on Montelukast. RxISK.org is one of the leading adverse event reporting

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

sites for dependence and withdrawal linked treatment problems. Dr. Healy further

posted and commented on RxISK on dependence and withdrawal from Montelukast.

None of this was related to litigation. Dr. Healy was familiar with Montelukast and its

adverse effects long before he was consulted in this litigation. Declaration Dr. David

Healy MD ¶13.

Dr. Healy explains that he was consulted in eight (8) Singulair®/montelukast

litigation cases. One did not seek a causation opinion, just general background on the

drug and its neuropsychiatric adverse effects. In four (4) cases, he opined that

Montelukast likely did not play a part in the plaintiffs' neuropsychiatric injuries. In

three (3) cases, including this matter, he offered an opinion that

Singulair®/montelukast toxicity caused neuropsychiatric injury. Declaration Dr. David

Healy MD ¶12. Dr. Healy rejecting causation in more cases than he found it tends to

undermine movant's claim that his opinions were merely "litigation driven." Rather,

his opinions derive from the same process he has used in diagnosing and managing

patients for decades. Declaration Dr. David Healy MD ¶14.

Despite Merck's efforts to minimize and mischaracterize the factual basis for

Dr. Healy's opinions in this case, he had a fulsome record of relevant information and

did not rest his findings on only two interviews with Richard Parker. As detailed in his

report and disclosures, Vargas Declaration Exhibit A, and discussed in his

depositions, Dr. Healy conducted a comprehensive review of transcripts of ten (10)

depositions conducted by defendants in this case (including the full day deposition of

plaintiff Richard Parker, the deposition of plaintiff's father Richard Parker, the

deposition of plaintiff's mother Carole Parker, and the depositions of numerous

treating and prescribing physicians), and all of Richard Parker's then available medical

records which exceeded one thousand (1000) pages. He "also reviewed medical

literature reporting related neuropsychiatric problems-including consulting some of the

#14540270.1

authors of these articles; FDA published information on the benefits and hazards of this drug, and background research on some puzzling aspects of Mr. Parker's clinical presentation not covered elsewhere. These are the kinds of materials experts in my field regularly rely upon to reach opinions on the cause of neuropsychiatric injuries and drug induced toxicity." Declaration Dr. David Healy MD ¶15. "The use of clinical interviews where possible is fundamental to psychiatric practice, and training and experience in the field to assess for and test self-serving, untrue, or contradictory statements by patients is germane to the practice of psychiatry and the same principles help ensure reliable information in a litigation setting." Declaration Dr. David Healy MD ¶16.

Movants' arguments that Dr. Healy's opinions should be excluded as "litigation driven" are undermined by Dr. Healy's substantial qualifications, pre-litigation peer-reviewed research and publication on drug induced toxicity and suicidality (albeit none yet on Singulair®), and decades of academic, clinical and consulting experience with the ability of a variety of drugs to cause neuropsychiatric adverse events and injuries. Movants cherry pick out of context quotes from among the several depositions Dr. Healy gave to raise questions as to his methodology and in doing so fail to address the overall methodology as a whole as required by *Wendell*. 858 F.3d at 1233. The authorities cited by movants for the proposition that this is a "litigation driven opinion" are not persuasive. *In re Novatel Wireless Sec. Litig*, 846 F. Supp. 2d 1104 (S.D. Cal. 2012) addressed the admissibility of a loss causation expert in a securities class action whose opinion hinged on an erroneous legal standard, rendering the case uninstructive where, as here, we have an experienced and qualified physician using appropriate differential diagnosis methodology to diagnose the cause of injury.

Movants cite *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*, 424 F. Supp. 3d 781,797 (N.D. Cal. 2020) for the proposition that an expert's

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

"unduly results-driven" analysis be excluded. That matter involved biological plausibility and general causation experts, and not a physician utilizing differential diagnosis. It is noteworthy that in addressing claims of lack of pre-litigation publication of the proposed expert's work, In re Viagra cited Wendell 858 F. 3d at 1236 (quoting an expert's explanation for why he had not published "[o]pinions are not publishable. Data is publishable. What I'm reporting here is my opinion." In re Viagra at 791. The same holds true here. That Movants do not agree with Dr. Healy's conclusions does not make his opinion any more "litigation driven" and excludable than the experts offered by defendants.

## B. DR. HEALY EMPLOYED DIFFERENTIAL DIAGNOSIS IN A RELIABLE WAY TO DETERMINE THE CAUSE OF PLAINTIFF'S INJURIES

Movants complain that Dr. Healy had an inadequate basis to rule in Montelukast as a cause of Richard Parker's injuries, and that he failed to reliably apply the differential diagnosis methodology to rule out other causes of his neuropsychiatric injuries. Dr. Healy's report and disclosures, testimony and declaration establish otherwise. Movants' challenges to Dr. Healy's assessment and clinical judgment on various issues in Richard Parker's complex clinical picture go to the weight of his testimony, not to its admissibility. The proper resolution of these issues lies in cross examination and the sound judgment of the trier of fact.

Dr. Healy explained his basis for ruling in Montelukast as a cause of Richard Parker's suicidality and other neuropsychiatric injuries. "Information available from the FDA which I reviewed, its actions with respect to Singulair®/montelukast, and the actions of Richard Parker's treating physician taking him off the drug due to the boxed warning were more than enough to "rule in" Singulair® in my differential diagnosis. That is the type of information regularly relied upon in assessing whether drug-induced

#14540270.1

injuries are present in a clinical setting or throughout my decades of consulting work."
Declaration Dr. David Healy MD ¶26. Physicians in the real world do not wait for
published epidemiology or randomized controlled trials to diagnose and treat patients
who are being adversely affected by drugs or toxic substances. Richard Parker's
prescribing physician Dr. Reddy acted based on the black box warning alone to take
him off the drug, and had she not done so Richard Parker's next suicide attempt might
have succeeded. Surely Movants are not claiming that physicians cannot rely on
information in the labeling of its products. Dr. Healy detailed his extensive consulting
work for government entities and coroner's inquests and observed "In none of these
matters was the presence of randomized controlled trials establishing the general
effects of the numerous drugs in question necessary to reach an opinion within a
reasonable degree of medical certainty as to whether drug toxicity induced a suicide or
homicide. Declaration Dr. David Healy MD ¶6.

Dr. Healy further explains that his observations about the several Montelukast
users he was asked to evaluate were not research he used to base his opinions.

> "Merck appears to misinterpret my testimony where I was
> describing seeing patterns of adverse effects among the cases
> of montelukast induced toxicity that I was reviewing,
> including the above-captioned matter. Defendants'
> Memorandum 10-12-11:8. This was not "research" or "case
> studies" I needed to form an opinion on drug-induced
> neuropsychiatric injury in these cases. My opinions were
> based upon generally accepted differential diagnosis
> methodology and assessment of causation of drug induced
> adverse events. Observations of patterns of neuropsychiatric
> impact are interesting and merit further study but are not

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF
DAVID HEALY M.D.
#14540270.1

essential to my opinion rendered here." Declaration Dr.
David Healy MD ¶24.

He also clarified his testimony about general causation. "Merck also misinterprets my comments on general causation vs. specific causation. General causation, for which I was not asked to render an opinion in this case, is of limited utility in assessing whether there is drug-induced toxicity causing neuropsychiatric injury in a given case." Declaration Dr. David Healy MD ¶25.

Movants claim that Dr. Healy did not utilize "objective tests" or collaborate with others to reach his conclusions. Dr. Healy explained in detail in his Declaration Dr. David Healy MD ¶19:

> "There are no "objective tests" that would enhance my
> evaluation of whether Richard Parker's neuropsychiatric
> injuries were the result of drug induced toxicity from
> Singulair®/montelukast. Merck raises the Barnes akathisia
> rating scale but that focuses on an observable motor
> restlessness that antipsychotic drugs can trigger and is
> therefore not helpful in this case. People with drug induced
> akathisia capable of leading to suicide can score zero on the
> Barnes scale. The Hamilton Rating Scale for Depression
> (HAM-D) measures a series of items that both the illness of
> depression and its treatment can aggravate, such as suicide,
> anxiety, insomnia, libido and others. Worsening illness
> yields a high score but if the treatment is primarily what is
> causing the problem, the same answers should yield a low
> score. The utility and reliability of scales like this hinge on
> clinical judgment. These instruments, per se, do not delivery

#14540270.1

objectivity. I have lectured on this issue extensively and knew the creator of the scale, Max Hamilton. I have considered and ruled out whether other treatments were playing a role in Mr. Parker's case. I took time to consider the potential role of treatments for depression worsening symptoms in Mr. Parker's case as well as in the McLaughlin and Bueno cases."

Dr. Healy further explained he collaborated where helpful, reaching out to treating physicians in the Bueno and McLaughlin matters, but such was not necessary in this case given the substantial records. Declaration Dr. David Healy MD ¶23.

Movants focus considerable attention on Dr. Healy's alleged failure to "rule out" alternative causes for Richard Parker's neuropsychiatric injuries, again cherry picking brief quotes out of several lengthy depositions of Dr. Healy conducted in this case and the two companion cases Bueno and McLaughlin. Def Memorandum 18-25. The piecemeal analysis fails to look at the thoroughness and reliability of the methodology as a whole. As detailed in his report, and to the extent he was asked upon deposition, Dr. Healy did in fact consider and address in detail the potential role of Richard Parker's personal and family medical history, the impact of other medical conditions including his lifelong asthma, the role of other drugs, both illicit and those prescribed for asthma, treatment of depression, anxiety, and pain, the potential existence of mental illness, preexisting anxiety due to asthma and its treatment, family tension with his parents and uncle. See also Declaration Dr. David Healy MD ¶21 and ¶22.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1

## C. DR. HEALY'S PASSING COMMENTS ON THE EFFICACY OF SINGULAIR®/MONTELUKAST AND CONSIDERATION OF PLAINTIFF'S LIPOMAS WERE NOT INTENDED TO BE EXPERT CAUSATION OPINIONS OFFERED IN THIS CASE

Dr. Healy is not offering an opinion on the efficacy of Singulair®/Montelukast but explains he is commenting on Richard Parker's observations and the medical records. "My role in this case was to assess the possible causes of Richard Parker's neuropsychiatric injuries and render an opinion. I made passing comment that there were questions of Singulair®/montelukast efficacy compared to other options based on Richard Parker's view that montelukast was not significantly helping him and consistent with evidence in his medical records to that effect. I am not offering opinion evidence on the efficacy of Singulair®/montelukast in treating asthma and allergies but am competent to comment on these aspects of his chart." Declaration Dr. David Healy MD ¶17.

To whatever extent Dr. Healy's report ascribes causation for Richard Parker's limpomas, he is willing to modify that and merely comment on them as part of the clinical picture he considered. "I am not offering an expert opinion of the causation of Richard Parker's lipomas. Their presentation is part of his overall clinical presentation and probably indicative of montelukast drug-induced toxicity as it is a feature of drug-induced toxicity that it affects multiple organ systems. Like other misdiagnoses in Richard Parkers records, these are not gynecomastia but are lipomas and Merck does not appear to dispute this. However, I have not been asked to attribute specific or general causation opinion on these lipomas and to the extent my report and disclosures are not clear on that please deem them amended." Declaration Dr. David Healy MD ¶18.

Dr. Healy's modification should dispose of Movants Point B, Db 12-13.

#14540270.1

# IV. CONCLUSION

Dr. Healy's specific causation opinions meet the standards of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and Fed. R. Evid. 702 and should be admitted. If the Court has doubts about admissibility, it is respectfully requested that they be resolved in a hearing.

Dated: July 8, 2024

/s/ Lynne M. Kizis

Co-Counsel for Plaintiff

Email: lkizis@wilentz.com

/s/ Shehnaz M. Bhujwala

Local Counsel for Plaintiff

Email: bhujwala@boucher.la

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14540270.1