ALEXANDER G. CALFO, SBN 152891
acalfo@kslaw.com
SUSAN V. VARGAS, SBN 177972
svargas@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310

Attorneys for Defendants
MERCK & CO., INC.; MERCK SHARP
& DOHME CORP.[1]; ORGANON & CO.;
and ORGANON LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PARKER, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME CORP., a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, Inclusive, <br><br> Defendants. | Case No. 3:24-cv-00916-H-BLM <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT THE OPINION TESTIMONY OF DAVID HEALY** <br><br> **Hearing Date:** **August 19, 2024** <br> **Hearing Time:** **10:30 a.m.** <br> **Courtroom:** **12A** <br> **Judge:** **Hon. Marilyn L. Huff** <br><br> Action Filed: May 23, 2024 <br> Trial Date: November 12, 2024 |

---

[1] Merck Sharp & Dohme Corp. is now known as Merck Sharp & Dohme LLC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. ARGUMENT .......................................................................................................2

    A. Plaintiff Seeks Application of an Outdated Legal Standard. ....................2

    B. Dr. Healy's Opinions Should Be Excluded As Litigation-Driven. ............4

    C. Dr. Healy's Differential Diagnosis Is Unreliable.......................................7

        1. Plaintiff failed to address Defendants' arguments that Dr. Healy's analysis lacks scientific objectivity and relies on a purported temporal relationship. .................................8

        2. Dr. Healy did not reliably "rule in" montelukast as a potential cause of Plaintiff's alleged neuropsychiatric conditions...............8

        3. Dr. Healy failed to "rule out" alternative causes of Plaintiff's alleged conditions.................................................................................12

    D. Dr. Healy's Untimely Declaration and Opinions Should Be Excluded...13

III. CONCLUSION..................................................................................................14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alivecor, Inc. v. Apple, Inc.*,
　No. 21-cv-03958, 2024 WL 591864 (N.D. Cal. Feb. 13, 2024) ...................... 3, 4, 11

*Clausen v. M/V New Carissa*,
　339 F.3d 1049 (9th Cir. 2003) ............................................................. 8, 12, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
　43 F.3d 1311 (9th Cir. 1995) ............................................................................. 5, 6

*Hendrix ex rel. G.P. v. Evenflo Co.*,
　609 F.3d 1183 (11th Cir. 2010) .......................................................................... 8, 9

*Gen. Elec. Co. v. Joiner*,
　522 U.S. 136 (1997) ............................................................................................ 3, 4

*Kilpatrick v. Breg, Inc.*,
　613 F.3d 1329 (11th Cir. 2010) .............................................................................. 7

*McClain v. Metabolife Int'l, Inc.*,
　401 F.3d 1233 (11th Cir. 2005) ........................................................................ 8, 10

*Messick v. Novartis Pharms. Corp.*,
　747 F.3d 1193 (9th Cir. 2014) .......................................................................... 11, 12

*In re Novatel Wireless Sec. Litig.*,
　846 F. Supp. 2d 1104 (S.D. Cal. 2012) .................................................................. 6

*Plantan v. Smith*,
　No. 3:22-cv-00407, 2024 WL 3048648 (E.D. Va. Jun. 18, 2024) ........................... 3

*Sprafka v. Med. Device Bus. Servs., Inc.*,
　No. 22-cv-00331, 2024 WL 1269226 (D. Minn. Mar. 26, 2024) ............................ 3

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*,
　424 F. Supp. 3d 781 (N.D. Cal. 2020) .................................................................. 7

*Wendell v. GlaxoSmithKline LLC*,
　858 F.3d 1227 (9th Cir. 2017) ............................................................................. 11

*Zaragoza v. Cnty. of Riverside*,
   No. 5:20-cv-01381, 2024 WL 663235 (C.D. Cal. Jan. 18, 2024) ............................. 3

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................................... 2

**Other Authorities**

Federal Rule of Evidence 104 ..................................................................................... 3

Federal Rule of Evidence 401 ............................................................................ 1, 2, 14

Federal Rule of Evidence 403 ............................................................................ 1, 2, 14

Federal Rule of Evidence 702 ......................................................................... 1, 2, 3, 4

Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., Organon & Co., and Organon LLC (collectively, "Defendants"), pursuant to Federal Rules of Evidence 401, 403, and 702, file this reply in support of their Motion to Exclude the Opinions of Dr. David Healy ("Motion") (Dkt. 9).

## I. INTRODUCTION

Plaintiff's Opposition (Dkt. 23) is noteworthy for its reliance on an outdated version of Federal Rule of Evidence 702 ("FRE 702") and accordingly inapplicable case law as well as its failure to engage meaningfully with Defendants' arguments warranting the exclusion of Dr. Healy's opinions. Instead, recognizing the impact of the amendments of FRE 702 and the shortcomings of the basis for Dr. Healy's opinions and his methodologic approach, Plaintiff attempts to interject untimely opinions and justifications via an improper declaration from Dr. Healy. Plaintiff's Opposition amounts to little more than a regurgitation of Dr. Healy's unabashed *ipse dixit* declaration, which should be excluded in its entirety.[2] Even if the Court were inclined to consider Dr. Healy's improper declaration, it does not alter the result: Dr. Healy's opinions should be excluded because they are (a) speculative and litigation-driven and (b) the product of an improper and unreliable application of the differential diagnosis methodology as he did not scientifically "rule in" montelukast or "rule out" numerous alternative causes for Plaintiff's purported conditions. In short, Plaintiff has fallen far short of his burden under the applicable version of FRE 702 to establish that Dr. Healy's opinions are admissible.[3]

---

[2] *See* Defendants' Objections to and Motion to Strike Declaration of David Healy, filed concurrently herewith.

[3] Plaintiff concedes that Dr. Healy has not and is not offering opinions regarding the efficacy of Singulair and montelukast or the cause of Plaintiff's alleged lipomas. Opp'n at 16; Healy Decl. at ¶¶ 17-18. As such, the Court should preclude Dr. Healy from delving into these topics. Yet, despite these admissions, Plaintiff attempts to keep the door open to Dr. Healy "comment[ing] on" Singulair's efficacy and the irrelevant alleged lipomas as part of Plaintiff's clinical picture. *Id.* This is wholly improper and should not be permitted by the Court. Dr. Healy is unqualified to offer opinions on these

## II. ARGUMENT

### A. Plaintiff Seeks Application of an Outdated Legal Standard.

Plaintiff relies on an improper legal standard, quoting the *former* version of FRE 702. *See* Opp'n at 4. FRE 702 was amended on December 1, 2023 to (1) clarify that the proponent of expert testimony has the burden of proof (preponderance) to establish all four substantive criteria for expert testimony; (2) require a tighter connection between an expert's opinions and the methods they use; and (3) emphasize the court's role in first determining whether a specific opinion is "more likely than not" supported by an expert's methodology. Contrary to what Plaintiff represented to the Court, FRE 702 now reads as follows (additions underlined and deletions indicated as strike-through text):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if <u>the proponent demonstrates to the court that it is more likely than not that</u>:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) ~~the expert has reliably applied~~ <u>the expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

Aside from mis-quoting FRE 702, Plaintiff relies throughout his Opposition on an incorrect application of the rule.[4] More specifically, Plaintiff principally argues that a "liberal thrust" favoring admission should be applied, and that Defendants' challenges

---

topics, has disclaimed any such opinions, and any attempt to insert these irrelevant issues into this case would serve no purpose other than to unduly prejudice Defendants, confuse the jury, and result in needless detours to establish the impropriety and inaccuracy of such testimony. *See* Mot. at 12-13; FRE 401, 403, 702.

[4] FRE 702, with its 2023 amendments, is the binding law – not prior precedent. 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.").

to Dr. Healy's methodology go to the "weight of his testimony, not to its admissibility." Opp'n at 4-5, 12. However, the federal judiciary's Civil Rules Committee expressly stated that FRE 702 was amended to clarify that the exact standard Plaintiff argues for is an "incorrect application" of the rule:

> [M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. **These rulings are an incorrect application** of Rules 702 and 104(a).

Committee Note to 2023 Amendments at (1) (emphasis added); *see also Sprafka v. Med. Device Bus. Servs., Inc.,* No. 22-cv-00331, 2024 WL 1269226 (D. Minn. Mar. 26, 2024) (excluding plaintiff's causation expert under amended FRE 702).

Compounding Plaintiff's improper application of the law, he similarly argues that "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system"—including cross-examination of the expert. Opp'n at 6. But "allow[ing] cross examination to make up for what [an expert's] opinion may lack in reliability," as Plaintiff hopes this Court will do, is not permissible under FRE 702. *See Plantan v. Smith,* No. 3:22-cv-00407, 2024 WL 3048648, at *4-5, 12, n.5 (E.D. Va. Jun. 18, 2024); *see also* Committee Note to 2023 Amendments at (2) ("Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support").

Contrary to the lenient standard implored by Plaintiff, this Court must hold Plaintiff to his heavy burden of proving that Dr. Healy's opinions are admissible by a "preponderance of the evidence." *Zaragoza v. Cnty. of Riverside*, No. 5:20-cv-01381, 2024 WL 663235 at *2 (C.D. Cal. Jan. 18, 2024); *see* FRE 702; Mot. at 7-9. Expert testimony "connected to existing data only by the *ipse dixit* of the expert" must not be admitted. *Alivecor, Inc. v. Apple, Inc.*, No. 21-cv-03958, 2024 WL 591864, at *4 (N.D.

Cal. Feb. 13, 2024) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Plaintiff has failed to carry his burden, and Dr. Healy's opinions must be dismissed.

### B. Dr. Healy's Opinions Should Be Excluded As Litigation-Driven.

Litigation-driven opinions are unreliable and should be excluded under FRE 702. *See* Mot. 10-11. Plaintiff fails to address any of the case law cited by Defendants, choosing instead to offer the illogical argument that Dr. Healy's opinions are not driven by litigation because he was consulted in eight Singulair *litigation* cases but declined to attribute causation in *some* of those cases. Opp'n at 10; Healy Decl. at ¶ 12. This type of circular logic does not demonstrate that Dr. Healy's opinions are not litigation-driven—especially when Dr. Healy admitted under oath **repeatedly**[5] that his interviews of Plaintiff and two other litigants were the "best evidence" of causation. *See* Mot. Ex. B, Healy (*Parker*) Dep. at 248:18-22; Mot. Ex. AP, Healy (*Bueno*) Dep. at 36:3-7; Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 144:20-145:3. Moreover, Dr. Healy admitted at deposition that he was still in the "early stage" of assessing the information and was making a "judgment call" that could be "wrong." Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 220:10-22. This is completely inconsistent with Dr. Healy's current about-face that he did not form his opinions for purposes of and during litigation.

Plaintiff readily concedes that Dr. Healy has never published anything in the peer-reviewed literature regarding montelukast, much less conducted any study to test his "early stage" belief that the medicine can cause the conditions Plaintiff now claims to have suffered. *Compare* Opp'n at 11 *with* Mot. Ex. A (Healy Rpt.) at 24. Plaintiff was thus forced to devote pages of his Opposition to discussing Dr. Healy's so-called "substantial qualifications" with SSRI antidepressant medications, claiming that this absolves Dr. Healy's opinions about montelukast from being litigation-driven. *See*

---

[5] Plaintiff generally complains that Defendants "cherry-pick" Dr. Healy's testimony (Opp'n at 11, 15) despite citing to approximately 70 pages of it. Yet, Plaintiff offers no testimony from Dr. Healy to dispute or otherwise put into some other context the unequivocal testimony cited by Defendants.

Opp'n at 11.  But Dr. Healy's time spent advocating against an entirely different class of medications (SSRIs) does not amount to pre-litigation experience or expertise with the specific medication at issue in this case.  The fact remains that Dr. Healy has no material experience or qualifications related to Singulair or montelukast.  Mot. at 9.

Similarly, the fact that Dr. Healy "hosted a series of posts on RxISK.org" including a post and comment "on dependence and withdrawal from montelukast" (topics not at issue here) that was unrelated to litigation, Opp'n at 9-10, does nothing to demonstrate that Dr. Healy's opinions regarding the specific cause of Plaintiff's alleged injuries are not litigation-driven. Providing an online platform for others to express non-peer-reviewed anecdotal opinions certainly does not constitute pre-litigation expertise. That is particularly true here given Dr. Healy's testimony that he: (1) has not used RxISK.org to do any epidemiologic investigations related to montelukast; (2) does not know if any researcher has used the RxISK.org website to conduct an epidemiologic investigation related to montelukast; and (3) has not completed any evaluation of the RxISK reports that may be related to montelukast. Ex. AZ, Healy (*McLaughlin*) Dep. at 101:23-102:9; 109:6-11.

Dr. Healy's involvement "manag[ing] a montelukast case a decade ago" is similarly unconvincing. Opp'n at 9; *see* Healy Decl. at ¶ 13. Although Plaintiff provides no details regarding this alleged montelukast case, Defendants assume Dr. Healy refers to the "Cox" case, a criminal investigation where the defendant faced charges of sexual molestation. Ex. AZ, Healy (*McLaughlin*) Dep. at 114:18-115:17. If anything, the "Cox" case is further evidence that Dr. Healy's experience with montelukast stems solely from his work as a litigation consultant, i.e., it is not evidence that his opinions about the medicine "gr[ew] naturally and directly out of research [he has] conducted independent of the litigation," as is required to be reliable. *See Daubert v. Merrell Dow Pharms., Inc.* (*"Daubert II"*), 43 F.3d 1311, 1317 (9th Cir. 1995).  Nothing about Dr. Healy's work on the "Cox" case thus changes the fact that he had zero non-litigation experience with Singulair or montelukast prior to forming an opinion in this case. *See* Mot. Section IV.

When an expert's "testimony is not based on 'pre-litigation' research or if the expert's research has not been subjected to peer review, the expert must explain precisely how he went about reaching his conclusions and point to some objective source, a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like, to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field." *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107 (S.D. Cal. 2012) (citing *Daubert II*, 43 F.3d at 1318–19). Nowhere in his report did Dr. Healy do so, which is unsurprising given the unreliability of his methodology and his testimony that he never reviewed any controlled epidemiological studies, scientific data, or medical literature when forming his opinions. Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 143:23-145:3; 145:13-18; 209:23-210:14; 212:3-10; 238:10-14; 360:20-23.

Instead, Plaintiff claims *In re Novatel* is distinguishable because it "addressed the admissibility of a loss causation expert in a securities class action whose opinion hinged on an erroneous legal standard." Opp'n at 11. The findings of *In re Novatel* were not limited to a narrow type of case but, rather, stand for the proposition that an expert's opinion developed during litigation and not subject to peer review must be explained precisely and must point to an **objective** source. *In re Novatel,* 846 F. Supp. 2d at 1107. Dr. Healy has simply not done that here. He does the exact opposite—claiming his methodology and analysis is right because that is how *he* does it.[6] Plaintiff also tries to

---

[6] In an impermissible and belated attempt to identify objective sources to support Dr. Healy's methodology, Plaintiff cites two FDA Guidance Documents that are not found in Dr. Healy's report. *See* Opp'n at 9. Plaintiff leaves entirely unexplained how these FDA Guidance Documents are supportive, and a review of their contents reveals they are not. The 2005 FDA Guidance on Good Pharmacovigilance Practice, for example, explains that case reports—which is what Plaintiff's case amounts to when Dr. Healy utilizes it to attempt to "rule in" montelukast as a potential cause of Plaintiff's alleged conditions—serve only as the first step in the causation inquiry as they can, at times, generate a safety signal that warrants further investigation; such reports alone, however, are not sufficient to prove causation as Dr. Healy so contends. *See, e.g.*, Ex. A to Opp'n, 2005 FDA Guidance on Good Pharmacovigilance Practices at 4 ("It is possible that even

side-step the inevitable impact of *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig.*, 424 F. Supp. 3d 781, 797 (N.D. Cal. 2020)—where the court excluded an expert's "unduly results-driven" analysis—by noting that it involved a general, rather than specific, causation expert. Opp'n at 11-12. However, the *type* of causation expert is of no import, and Plaintiff cites to no authority allowing specific causation experts to proffer "unduly results-driven" opinions. Dr. Healy's opinions should be excluded because they are litigation-driven and thus unreliable.

### C. Dr. Healy's Differential Diagnosis Is Unreliable.

Dr. Healy's opinions should be excluded because he failed to employ a proper differential diagnosis methodology, which requires an expert to "compil[e] or rul[e] in, a comprehensive list of possible causes that are generally capable of causing the illness or disease at issue, and then systematically and scientifically rul[e] out specific causes until a final, suspected cause remains." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342 (11th Cir. 2010) (internal citation omitted). Yet repeatedly, throughout his report, deposition testimony, and now his untimely declaration, Dr. Healy offers nothing more than *ipse dixit* statements that he conducted a proper differential diagnosis. In his declaration, Dr. Healy goes one step further and baldly asserts that "[t]he process of differential diagnoses in a drug-induced toxicity case is notably different from

---

a single well documented case report can be viewed as a signal, particularly if the report describes a positive rechallenge or if the event is extremely rare in the absence of drug use. Signals ***generally indicate the need for further investigation, which may or may not lead to the conclusion that the product caused the event***. After a signal is identified, it should be further assessed to determine whether it represents a potential safety risk and whether other action should be taken.") (emphasis added); *id*. at 7 ("For any individual case report, it is rarely possible to know with a high level of certainty whether the event was caused by the product. To date, there are no internationally agreed upon standards or criteria for assessing causality in individual cases, especially for events that often occur spontaneously (e.g. stroke, pulmonary embolism). Rigorous pharmacoepidemiologic studies, such as case-control studies and cohort studies with appropriate follow-up, are usually employed to further examine the potential association between a product and an adverse event.").

differential diagnoses for other medical diagnoses." Healy Decl. at ¶ 20. Setting aside the self-serving characterization of Plaintiff's alleged condition as "drug-induced toxicity," Plaintiff does not cite any scientific or legal authority for the assertion that so-called "drug-induced toxicity" cases are carved out of the standard differential diagnosis methodology, nor have Defendants located any such authority.

### 1. Plaintiff failed to address Defendants' arguments that Dr. Healy's analysis lacks scientific objectivity and relies on a purported temporal relationship.

Plaintiff does not address Defendants' arguments that: (1) Dr. Healy's differential diagnosis lacks scientific objectivity, Mot. at 19-20; and (2) Dr. Healy's causation opinion impermissibly rests his differential diagnosis on a purported temporal relationship between Plaintiff's use of montelukast and his alleged neuropsychiatric symptoms, *id.* at 20-21. Plaintiff therefore waives any objections with respect to Defendants' arguments regarding these two topics, which individually and collectively justify exclusion of Dr. Healy's opinions.

### 2. Dr. Healy did not reliably "rule in" montelukast as a potential cause of Plaintiff's alleged neuropsychiatric conditions.

Dr. Healy failed to reliably "rule in" montelukast as a potential cause of Plaintiff's alleged neuropsychiatric conditions. Mot. at 13-18; *see Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("Expert testimony that rules in a potential cause that is *not* so capable is unreliable.") (internal citation omitted); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("The issue at this point in the process is which of the competing causes are generally capable of causing the patient's symptoms or mortality.... It is important to realize that a fundamental assumption underlying [differential diagnosis] is that the final, suspected 'cause'...must actually be capable of causing the injury.") (alteration in original) (citation and punctuation omitted); *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1197–98 (11th Cir. 2010) ("The district court identified errors in Dr. Hoffman's differential etiology

analysis at [] the rule in…step[]. Specifically, the district court determined that Dr. Hoffman fail[ed] to show how, by scientifically valid methodology, traumatic brain injury could ever be a possible cause of autism in anyone.") (third alteration in original) (citations and punctuation omitted). He has not identified any medical literature or studies he reviewed[7] nor has he described any reliable scientific methodology he used to establish general causation, all necessary steps to "ruling in" montelukast as a potential cause. *See* Mot. at 15 n.10.  Instead, Plaintiff tries to distract the Court with Dr. Healy's *ipse dixit* and his self-serving, unsupported, and outlandish proclamation that general causation is "of limited utility" in a case necessitating analysis of medical causation. *See* Healy Decl. at ¶ 25. Although Dr. Healy's desire to downplay general causation is not surprising given his admission that he has no such opinion, *see* Mot. at 14-16, that does not change the fact that courts consistently hold general causation to be a fundamental and threshold requirement of a properly conducted differential diagnosis. *See id.* at 16 & n.11; 18 & n.12.

Instead of properly "ruling in" montelukast as a potential cause of Plaintiff's alleged neuropsychiatric conditions, Dr. Healy now states that "[i]nformation available from the FDA which I reviewed,[8] its actions with respect to Singulair/montelukast, and the actions of Richard Parker's treating physician taking him off the drug due to the

---

[7] Plaintiff now claims that Dr. Healy reviewed medical literature and consulted some of the authors of those articles. Opp'n at 10-11; Healy Decl. at ¶ 15. This is the first time Defendants are hearing that Dr. Healy reviewed *any* literature for his opinions in this case. Dr. Healy's report and declaration are devoid of any citations to literature, and he testified that he did not review the relevant scientific literature about montelukast. Mot. at 15-16; Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 143:23-145:3; 145:13-18; 209:23-210:14; 212:3-10; 238:10-14; 360:20-23. Instead, he claims to have evaluated Plaintiff's case "exclusively on the individual facts for each case" when forming an opinion—not the literature. Ex. AZ, Healy (*McLaughlin*) Dep. at 145:13-146:9.

[8] The only information from FDA previously identified by Dr. Healy were adverse event reports ("AERs"), which he now says are "not essential to [his] opinion." Healy Decl. at ¶ 24; Opp'n at 13-14. In short, Plaintiff concedes that AERs are not evidence of and cannot prove general causation. *See* Mot. at 17.

boxed warning were more than enough to 'rule in' Singulair in my differential diagnosis."[9] Healy Decl. at ¶ 26. First, Dr. Healy never identified in his report or during any of his three days of deposition these categories of information as the purported basis for "ruling in" montelukast, and the Court should thus disregard Plaintiff's belated attempt to salvage Dr. Healy's opinions with this untimely explanation. Second, information from FDA is insufficient to establish general causation. *See, e.g.*, *McClain*, 401 F.3d at 1250 ("A regulatory agency such as the FDA may choose to err on the side of caution. Courts, however, are required… to engage in objective review of evidence to determine whether it has sufficient scientific basis to be considered reliable.") (collecting cases) (internal citation omitted). And even if FDA actions could bear on general causation, they certainly cannot in this case given FDA's findings from its own epidemiologic study as reported in 2021: "Our study did not find any associations between montelukast use and inpatient depressive disorder or self-harm, compared with ICS [inhaled corticosteroid] use, either overall or across subgroups of age, sex, or calendar time. We observed a decreased risk of treated outpatient depressive disorder with montelukast use compared with ICS use." Ex. BA, Sansing-Foster (2021) at 390. Third, Plaintiff does not cite any authority to support—nor are Defendants aware of any—that the individual treatment decisions of a physician are an appropriate basis for ruling in montelukast as a potential cause of Plaintiff's alleged conditions.

In the absence of reliable scientific methodology, Plaintiff implores this Court just to take Dr. Healy's word for it that he properly "ruled in" montelukast as a potential cause of Plaintiff's injuries based simply on Dr. Healy's clinical experience.[10] *See, e.g.,*

---

[9] In his report and at deposition, Dr. Healy did not state that the actions of Plaintiff's treating physician, Dr. Sumana Reddy, were a basis for his "ruling in" Singulair as a potential cause of Plaintiff's injuries. *See* Mot. Ex. A, Healy Rpt. at 5, 23-24 (referencing Dr. Reddy but not citing her actions as a basis for his differential diagnosis).

[10] Perhaps to try to bolster his experience argument, Dr. Healy defends his decision not to administer objective testing to Plaintiff by discussing and discounting the Barnes akathisia rating scale and the Hamilton Rating Scale for Depression, confusingly

Opp'n at 12-13; *see also* Healy Decl. at ¶¶ 5-6. Not only are *ipse dixit* opinions of this sort inadmissible, *see Alivecor*, 2024 WL 591864, at *4 (expert testimony "connected to existing data only by the *ipse dixit* of the expert" must not be admitted) (citation omitted), but equally critical is the fact that Dr. Healy has **no clinical experience** related to Singulair or montelukast.

Finally, Plaintiff seeks to justify Dr. Healy's unscientific approach to a differential diagnosis by relying on *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017) and *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193 (9th Cir. 2014). However, both cases are readily distinguishable and neither saves Dr. Healy's opinions from exclusion. *Wendell* involved a plaintiff who alleged that he developed Hepatosplenic T-cell lymphoma (HSTCL), an "exceedingly rare and aggressive form of cancer." *Wendell*, 858 F.3d at 1230. This alone distinguishes *Wendell* from this case, where Plaintiff alleges depression, anxiety, and suicidality—all conditions that have been studied extensively, both in patients who have taken montelukast and patients who have never been exposed to the medication. Moreover, the expert in *Wendell* had "knowledge of the pertinent medical literature and [] knowledge of the epidemiology, diagnosis and natural history of HSTCL," and "throughout [the expert's] deposition testimony and in his expert report, the literature shows that patients exposed to 6-MP and anti-TNF drugs are at an increased risk for HSTCL." *Id.* at 1234. To the contrary, Dr. Healy did not review any controlled epidemiological studies, scientific data, or medical literature to determine whether montelukast is capable of causing any neuropsychiatric problem in any person.[11]

*Messick* is similarly distinguishable. Unlike Dr. Healy, who considered no literature related to montelukast when forming his opinions, the expert in *Messick* reviewed literature that addressed the relationship between bisphosphonates (the drug at-issue) and bisphosphonate-related osteonecrosis of the jaw (the alleged injury)

---

claiming these were raised by Defendants. *See* Opp'n at 14-15; Healy Decl. at ¶ 19. Neither of these measures were mentioned or discussed in Defendants' motion.

[11] *See supra* note 6.


("ONJ"). *Messick*, 747 F.3d at 1199 ("A doctor using a differential diagnosis grounded in significant clinical experience and examination of medical records and literature can certainly aid the trier of fact and cannot be considered to be offering 'junk science'."). Additionally, the expert in *Messick* had "extensive experience diagnosing and treating ONJ, including ONJ in patients who had been treated with bisphosphonates." *Id.* at 1196. Dr. Healy, in contrast, has no clinical experience whatsoever treating patients taking Singulair or montelukast—he does not prescribe the drug and never diagnosed or treated a patient who allegedly experienced adverse effects from the drug. Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 138:9–14, 142:14–18; Mot. Ex. AP, Healy (*Bueno*) Dep. at 113:5-8. Rather, the only "patients" Dr. Healy has seen who claim adverse events from Singulair are claimants in litigation. Mot. Ex. AO, Healy (*McLaughlin*) Dep. at 139:1–6, 142:8–13. Further, the condition at-issue in *Messick* was a signature injury. *See Messick*, 747 F.3d at 1195 (stating that the diagnosis definition of ONJ included "current or previous treatment with bisphosphonates"). Contrary to anxiety, depression, and suicidality—which occur for a variety of reasons unrelated to montelukast use—the injury in *Messick* was unique to patients who had taken or were taking the product at-issue. Since Plaintiff's conditions could be caused by numerous different factors unrelated to montelukast, a properly conducted differential diagnosis is essential.

Dr. Healy's opinions must be excluded because he failed to reliably rule in montelukast as a potential cause of Plaintiff's conditions, as required for a proper differential diagnosis.

### 3. Dr. Healy failed to "rule out" alternative causes of Plaintiff's alleged conditions.

To perform a proper differential diagnosis, "[a]fter the expert rules in all of the potential hypotheses that might explain a patient's symptoms, he or she must then engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Clausen,* 339 F.3d at 1058. The expert must "provide

reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation." *Id.* (internal citations and punctuation omitted). Failure to do so warrants exclusion. *Id.*; *see also* Mot. at 18-19.

Plaintiff makes a blanket claim that Dr. Healy considered other potential causes of Plaintiff's neuropsychiatric conditions. *See* Opp'n at 15; Healy Decl. at ¶¶ 21, 22. But Plaintiff fails to identify any specific portion of Dr. Healy's report or deposition testimony in which Dr. Healy describes any such analysis. Even if he did consider other causes—about which Defendants and the Court are left to guess—Dr. Healy does not provide any explanation as to how he scientifically ruled out those alternative causes. *See* Mot. at 21-25. Instead, according to his own deposition testimony, Dr. Healy simply discarded many of these potential causes, including Plaintiff's significant drug abuse history, pre-existing neuropsychiatric issues, history of trauma, and family history, as "irrelevant" or "laughable" without further explanation. *Id.*

Dr. Healy's opinion should be excluded because he "utterly fail[ed]" to offer any explanation as to how he ruled out alternative causes, let alone show that he did so using reliable "scientific methods and procedures." *See Clausen*, 339 F.3d at 1058 (internal citations omitted).

**D.     Dr. Healy's Untimely Declaration and Opinions Should Be Excluded**

Plaintiff appended to his Opposition a declaration from Dr. Healy. (Dkt. 23-1.) The declaration is nothing more than an improper attempt to disclose expert opinions after the Court's deadline. *See* Defendants' Objections to and Motion to Strike Declaration of David Healy, filed concurrently herewith. Plaintiff relies heavily on Dr. Healy's improper declaration, quoting lengthy paragraphs and otherwise summarizing the contents. *See, e.g.,* Opp'n at 1, 7, 11-16. For this reason and those stated in Defendants' Objections and Motion to Strike, the Court should not consider Dr. Healy's declaration or Plaintiff's Opposition.

### III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Motion, Defendants respectfully request that the Court exclude Dr. David Healy's specific causation opinion and testimony in its entirety pursuant to Federal Rules of Evidence 401, 403, and 702.

Dated: July 22, 2024

KING & SPALDING LLP

/s/ Susan V. Vargas
Alexander G. Calfo
Susan V. Vargas
Attorneys for Defendants
MERCK & CO. INC.,
MERCK SHARP & DOHME;
ORGANON & CO., and ORGANON LLC