ALEXANDER G. CALFO, SBN 152891
acalfo@kslaw.com
SUSAN V. VARGAS, SBN 177972
svargas@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:  +1 213 443 4355
Facsimile:  +1 213 443 4310

Attorneys for Defendants
MERCK & CO., INC.; MERCK SHARP
& DOHME CORP.[1]; ORGANON & CO.;
and ORGANON LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PARKER, an individual,<br><br>                           Plaintiff,<br><br>vs.<br><br>MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME CORP., a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, Inclusive,<br><br>                           Defendants. | Case No.  3:24-cv-00916-H-BLM<br><br>**DEFENDANTS MERCK & CO., INC., MERCK SHARP & DOHME CORP., ORGANON & CO., AND ORGANON LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF DIMA MAZEN QATO, MPH, PH.D.**<br><br>Hearing:      **August 19, 2024**<br>Time:         **10:30 a.m.**<br>Courtroom:    **12A**<br>Judge:        **Hon. Marilyn L. Huff**<br><br>Action Filed:  May 23, 2024<br>Trial Date:    November 12, 2024 |

---

[1] Merck Sharp & Dohme Corp. is now known as Merck Sharp & Dohme LLC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A.    Plaintiff Seeks the Application of an Outdated Legal Standard ................. 2

    B.    Plaintiff's Counsel Cannot Save Dr. Qato's Opinions by Offering Their Own. ....................................................................................... 4

    C.    Dr. Qato Is Not Qualified to Offer Opinions On FDA-Regulated Prescription Labeling. ................................................................................ 5

        i.    Plaintiff's Say-So Cannot Satisfy Rule 702. .................................... 7

    D.    Dr. Qato is Unqualified to Opine on Biological Plausibility. ..................... 8

    E.    Dr. Qato Did Not Employ a Reliable Methodology to Support Her Recalculation of Merck's Clinical Trial Data. ........................................... 10

III. CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alivecor, Inc. v. Apple, Inc.*,
  No. 21-cv-03958-JSW, 2024 WL 591864 (N.D. Cal. Feb. 13, 2024)........................4

*Boyer v. City of Simi Valley*,
  No. 219CV00560DSFJPR, 2024 WL 993316 (C.D. Cal. Feb. 13, 2024)..................3

*In re Canvas Specialty, Inc.*,
  261 B.R. 12 (Bankr.C.D. Cal. 2001).........................................................................6

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
  55 F. Supp. 2d 1024 (N.D. Cal. 1999).....................................................................10

*Christison v. Biogen Idec Inc.*,
  No. 2:11-cv-01140-DN-DBP, 2016 WL 6902706 (D. Utah Aug. 5, 2016)...............5

*In re Diet Drugs Prods. Liab. Litig.*,
  No. MDL 1203, 2000 WL 876900 (E.D. Pa. June 20, 2000)....................................6

*In re Diet Drugs Prods. Liab. Litig.*,
  No. MDL-1203, 2000 WL 962545 (E.D. Pa. June 28, 2008)....................................8

*Hardeman v. Monsanto*,
  997 F.3d 941 (9th Cir. 2021) ..................................................................................12

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009)................................................................11

*Hexum v. Eli Lilly & Co.*,
  No. 213CV02701SVWMAN, 2015 WL 5008263 (C.D. Cal. Aug. 10, 2015) ..........5

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
  524 F. Supp. 3d 1007 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595
  (9th Cir. Mar. 28, 2022)............................................................................................9

*Milward v. Acuity Specialty Prods. Group*,
  639 F.3d 11 (1st Cir. 2011).......................................................................................8

*In re Mirena Prods. Liab. Litig. (No. II)*,
  341 F. Supp. 3d 213 (S.D.N.Y. 2018) .................................................................9, 10

*In re Onglyza Prods. Liab. Litig.*,
   93 F.4th 339 (6th Cir. 2024) ...................................................................................9

*In re Paraquat Prods. Liab. Litig.*,
   No. 3:21-md-3004-NJR, 2024 WL 1659687 (S.D. Ill. Apr. 17, 2024) ....................12

*Porter v. Whitehall Lab'ys, Inc.*,
   9 F.3d 607 (7th Cir. 1993) .......................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
   369 F. Supp. 2d 398 (S.D.N.Y. 2005) .....................................................................4

*Romero v. Wyeth Pharms., Inc.*,
   No. 1:03-cv-1367, 2012 WL 12905978 (E.D. Tex. Apr. 26, 2012) .........................7

*Salinero v. Johnson & Johnson*,
   No. 1:18-cv-23643-UU, 2019 WL 7753453 (S.D. Fla. Sept. 5, 2019) ....................6

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   644 F. Supp. 3d 1075 (S.D. Fla. 2022) ....................................................................7

*Zaragoza v. Cnty. of Riverside*,
   No. 5:20-cv-01381, 2024 WL 663235 (C.D. Cal. Jan. 18, 2024) ............................3

**Court Rules**

Federal Rule of Evidence 702 ...............................................................1, 2, 3, 4, 7, 11

Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., Organon & Co., and Organon LLC (collectively, "Defendants"), pursuant to Federal Rules of Evidence 401, 403, and 702, submit this Reply in support of their Motion to Exclude the Opinions of Dima Mazen Qato, PharmD, MPH, Ph.D. ("Dr. Qato").

## I.   INTRODUCTION

Defendants moved to exclude Dima Mazen Qato, PharmD, MPH, Ph.D., because she is not qualified to opine on FDA-regulated labeling and biological plausibility, and her opinions lack reliability and scientific support. *See* Defs.' Mot. to Exclude Dr. Qato, Dkt. 10-1 ("Mot."). In response, Plaintiff does not dispute that Dr. Qato lacks any experience or expertise with FDA-regulated labeling. Moreover, Plaintiff relies on an outdated version of Federal Rule of Evidence 702 ("FRE 702") and argues that the "goal is to focus on the court's gatekeeping function to 'screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable.'" Pl.'s Amended Opp'n to Defs.' Mot. to Exclude Dr. Qato, Dkt. 27 ("Opp'n") at 12. Because the 2023 amendments to FRE 702 clarified that courts have a responsibility to act as "vigorous gatekeepers" and Dr. Qato's opinions epitomize "unreliable nonsense," they are inadmissible under FRE 702.

**Plaintiff Is Limited to the Opinions Delineated in Dr. Qato's Report.** As an initial matter, there is a complete disconnect between what Plaintiff's Opposition to Defendants' summary judgment motion now argues are the labeling "inadequacies," and what Dr. Qato states in her report. *See* Dkt. 24 at 18–19. Nowhere in Dr. Qato's report— or even her untimely and improper Declaration—does she opine that Singulair's Prescribing Information should have included a contraindication, or that the word "are" should replace the word "appear" in the Warning advising that certain reported adverse events "appear" consistent with a drug-induced effect. Although it seems obvious that Plaintiff cannot expand upon Dr. Qato's opinions vis-à-vis lawyer-driven theories presented for the first time in a summary judgment opposition, this apparently bears

repeating: Plaintiff cannot save Dr. Qato's defective labeling opinions by improperly acting as an expert himself and concocting his own opinions.

**Lack of Qualifications.** Plaintiff's Opposition provides nothing about Dr. Qato's qualifications to indicate that she is an expert or has any relevant experience in: (1) FDA-regulated labeling for pharmaceuticals; (2) developing, analyzing, or interpreting pre-clinical animal studies; (3) designing, conducting, implementing, or interpreting clinical trials; (4) performing bio-statistical analyses of clinical trials; or (5) conducting epidemiologic studies to assess and evaluate risks associated with pharmaceuticals. In failing to identify any such experience, Plaintiff effectively concedes that Dr. Qato is unqualified to opine on FDA-regulated prescription drug labeling, biological plausibility, and the method by which Merck conducted, interpreted and conveyed statistical information regarding clinical trials.

**Lack of Reliability.** Because Dr. Qato did not provide an intelligible methodology to support her original critique of a 2009 meta-analysis that Merck undertook in partnership with FDA, Plaintiff now provides an untimely Declaration that re-writes Dr. Qato's "critiques." *See* Dkt. 27-4, Opp'n Ex. 3. Even if this untimely Declaration could be considered (though it should not), *see* Defs.' Obj. to and Mot. to Strike,[2] Dr. Qato's opinions are inadmissible because she failed to review critical information concerning the FDA-approved statistical analysis that Merck employed and fails to apply a reliable methodology when proffering her own "crude" calculation.

## II. ARGUMENT

### A. Plaintiff Seeks the Application of an Outdated Legal Standard

Plaintiff relies on an improper legal standard, quoting the *former* version of FRE 702. *See* Opp'n at 11–12. Contrary to what Plaintiff represented to the Court, FRE 702

---

[2] *See* Defendants' Objections to and Motion to Strike Declaration of Dima Qato, filed concurrently herewith.

now reads as follows (additions underlined and deletions indicated as strike-through text):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if <u>the proponent demonstrates to the court that it is more likely than not that:</u>
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) ~~the expert has reliably applied~~ <u>the expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

In addition to misstating Rule 702, Plaintiff misconstrues the Rule's admissibility requirements by suggesting that clear issues with Dr. Qato's opinions, including "analytical gaps" and "faulty mathematical conclusion[s]" should be presented to a jury and go towards weight rather than admissibility. *See generally* Opp'n at 14–16. The amendment to the reliability prong of Rule 702(d), however, was intended to emphasize that whether the proponent of the expert has met the reliability prong, by a preponderance of the evidence, is a question of admissibility, not weight. *See* FRE 702 Advisory Committee's Note to 2023 Amendments; *see also Boyer v. City of Simi Valley*, No. 219CV00560DSFJPR, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024) (explaining that under the recent amendments to Rule 702, "[t]he Court is required to analyze the expert's data and methodology at the admissibility stage more critically than in the past").

Unlike the lenient standard implored by Plaintiff, the law is clear that this Court must hold Plaintiff to his heavy burden of proving that Dr. Qato is qualified to render her opinions and that such opinions are reliable by a "preponderance of the evidence." *Zaragoza v. Cnty. of Riverside*, No. 5:20-cv-01381, 2024 WL 663235 at *2 (C.D. Cal. Jan. 18, 2024); *see* FRE 702. Expert testimony "connected to existing data only by the

*ipse dixit* of the expert" must not be admitted. *Alivecor, Inc. v. Apple, Inc.*, No. 21-cv-03958-JSW, 2024 WL 591864, at *4 (N.D. Cal. Feb. 13, 2024) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  As detailed below, Plaintiff has utterly failed to satisfy his burden and therefore Dr. Qato's opinions must be excluded.

    **B. Plaintiff's Counsel Cannot Save Dr. Qato's Opinions by Offering Their Own.**

    Without citation to any expert testimony, Plaintiff's Opposition to Defendants' motion for summary judgment presents three entirely new theories concerning the alleged inadequacy of Singulair's label. Dkt. 24 at 14–15. Plaintiff maintains that:

- Singulair should have been contraindicated for patients with allergic rhinitis "who experienced suicidality while taking Singulair."
- The label should have stated that "Adverse Events *are* consistent with a drug-induced effect" rather than "Adverse Events *appear* consistent with a drug-induced effect."
- Merck should have sent "[D]ear [D]octor" letters to prescribers notifying them of the Black Box warning.[3]

    Nowhere in Dr. Qato's report does *she* offer these opinions.[4] Plaintiff's attorneys are not experts, and their home-spun theories cannot supplant Dr. Qato's. *See In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 407 (S.D.N.Y. 2005) (refusing to consider attorney argument masquerading as expert opinion on Rule 702 motion: "None of these elaborations by counsel is relevant. The subject of this motion is the proposed testimony of experts, not the theories of the lawyers"). This Court should reject

---

[3] This opinion is also inadmissible as it does not "fit" this case because Plaintiff Richard Parker was first prescribed Singulair prior to 2020, before the Black Box warning was in effect.

[4] While Plaintiff's "warnings expert," Jack E. Fincham, Ph.D., R.Ph. had offered expert opinions concerning contraindications in patients without asthma and "Dear Doctor" letters, Plaintiff withdrew his designation of Dr. Fincham as an expert in this case on or about May 20, 2024. (Declaration of Susan V. Vargas, filed concurrently with this Reply ("Vargas Reply Decl."), ¶ 5.)

Plaintiff's counsels' attempt to inappropriately hitch their novel labeling theories to Dr. Qato and limit Plaintiff's arguments regarding the adequacy of the label to the confines of Dr. Qato's report.[5]

### C. Dr. Qato Is Not Qualified to Offer Opinions On FDA-Regulated Prescription Labeling.

Plaintiff cannot dispute that Dr. Qato has no experience—practical or otherwise—working with, interpreting, or applying the detailed FDA regulations that establish the standard for the labeling of an FDA-approved prescription medicine like Singulair (tellingly, she failed to cite any of these regulations in her report). Nor can Plaintiff deny that prior to this litigation, Dr. Qato never analyzed the adequacy of a pharmaceutical label or even participated in considering the labeling language for a pharmaceutical. *See* Mot. at 2–4. Instead, Plaintiff's Opposition points to experiences entirely unrelated to FDA-regulated pharmaceutical labeling: *e.g.*, that Dr. Qato currently teaches at the University of Southern California in the School of Pharmacy; was previously a fellow of the National Academy of Medicine and Engineering during which she conducted no research;[6] and is currently funded by the National Institutes of Health to study medication adherence. Opp'n at 4. However, the question is not whether Dr. Qato is "well-educated," *see id.* at 12, but whether her experience is "relevant to the

---

[5] Even if Plaintiff could present these three new opinions at this late stage in the litigation, Dr. Qato would not be qualified to do so because she has no experience with FDA-regulated labeling, *see infra* section II.C, and is not a "physician, has not prescribed prescription drugs, has not counseled patients regarding the risks and benefits of a drug, is not an expert on clinical decision making," and thus "does not have a sufficient basis to understand what information is needed by a doctor in making a prescribing decision." *Christison v. Biogen Idec Inc.*, No. 2:11-cv-01140-DN-DBP, 2016 WL 6902706, at *3 (D. Utah Aug. 5, 2016); *Hexum v. Eli Lilly & Co.*, No. 213CV02701SVWMAN, 2015 WL 5008263, at *7 (C.D. Cal. Aug. 10, 2015) ("[T]he relevant inquiry is how a prescribing doctor would understand the label[.]"). *See* Mot. at 7–8.

[6] As a National Academy of Medicine Fellow, Dr. Qato was provided research funding. However, she testified that she conducted no research with the funding. Ex. 35 to Vargas Reply Decl., Qato Dep. at 102:1–103:5.

determination of the facts *in issue*" in this case. *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001) (emphasis added).[7]

Courts consistently hold that to opine on the adequacy of FDA-regulated warnings, proposed experts must have specialized expertise. *See, e.g.*, Mot. at 7–8; *see also Salinero v. Johnson & Johnson*, No. 1:18-cv-23643-UU, 2019 WL 7753453, at *4 (S.D. Fla. Sept. 5, 2019) (excluding physician's inadequate warning opinions as he lacked "any education, training, or experience in marketing, product testing, or the drafting of . . . warnings"); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *11 (E.D. Pa. June 20, 2000) ("[A]lthough Drs. Avorn and Rubin are fully qualified within their specialties, that does not qualify them to speak as experts in the field of the requirements of the federal regulations regarding labeling and warnings for FDA approved drugs."). Plaintiff fails to meet his burden to show that Dr. Qato has any expertise in FDA-regulated labeling. He does not dispute that Dr. Qato has never worked for the FDA, nor has she been asked to consult with the FDA or interact with the FDA in any capacity. Mot. at 3–4. She has not worked with any company to draft labeling for a medicine to ensure compliance with FDA regulations and expresses no familiarity with FDA regulations. *Id.* Indeed, Dr. Qato's total lack of specialized experience is not disputed and should be deemed uncontested. Without such specialized expertise, Dr. Qato lacks the qualifications to opine as to whether her proposed labeling language would satisfy the detailed federal regulatory requirements governing unilateral labeling changes.

---

[7] Plaintiff says that Dr. Qato was "one of the authors of a very impactful [sic] published in JAMA" regarding "different medications, including montelukast," (Opp'n at 4), but to the extent this article is mentioned in an attempt to buttress Dr. Qato's qualifications to opine on the adequacy of FDA-regulated labeling, Plaintiff misses the mark. This publication had nothing to do with FDA-regulated labeling, other than the fact that the authors looked at drug labeling and accepted everything that was in the label. *See* Ex. 35 to Vargas Reply Decl., Qato Dep. at 183:14–184:16.

### i. Plaintiff's Say-So Cannot Satisfy Rule 702.

Plaintiff's Opposition failed to respond to Defendants' arguments that Dr. Qato's labeling opinions are vaguely described, unsupported, and do not "fit" the facts of this case.[8] *See generally* Mot. at 15–16. Instead, Plaintiff, generally and without citation, states that "Dr. Qato's methodology meets the Daubert standard." Opp'n at 15. While Plaintiff's Opposition posits that Dr. Qato compared Singulair's labeling to what Merck "'knew' or 'should have know[n]' had it conducted adequate studies," (*id.* at 15–16), Plaintiff fails to identify or cite to any such comparison, much less how it serves as a reliable basis for a labeling opinion that supports the "inadequacies" alleged in Plaintiffs' Opposition to Defendants' summary judgment. *See id.* at 16.[9] Dr. Qato's opinions are confined to her report—which does not contain Plaintiff's counsel's "new" labeling theories, *see supra* section II.B.—and Plaintiff does not dispute that the opinions in Dr. Qato's report have no relevance to the facts of his case. To the extent that "adequate studies" refers to Dr. Qato's critique of the clinical trial data, that opinion not only lacks a reliable basis, but Dr. Qato never links it to any labeling opinion. *See infra* section II.E. Just as an expert's opinions are not rendered reliable by the expert's *ipse dixit*, Plaintiff's counsel's say-so cannot establish his experts' opinions as admissible. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1172 (S.D. Fla. 2022) ("Plaintiffs mere assurances that [the studies] are generally accepted studies in the scientific community are not sufficient to establish the reliability of those studies—the Court cannot simply take their word for it.").

---

[8] Plaintiff's shifting theories as to how Singulair's label is "inadequate" highlight why Dr. Qato's labeling critiques, which concern children and adolescents, as well as "food effects," do not "fit" the facts of this case.

[9] Plaintiff refers to *Romero v. Wyeth Pharms., Inc.*, No. 1:03-cv-1367, 2012 WL 12905978 (E.D. Tex. Apr. 26, 2012) to support this premise. However, in *Romero*, the majority of the proposed expert testimony was excluded, and the remaining opinions had a specific factual basis to support them (which is not the case here).

### D. Dr. Qato is Unqualified to Opine on Biological Plausibility.

Plaintiff's Opposition ignores Defendants' contention that Dr. Qato is *unqualified* to opine on biological plausibility and, instead, argues that Dr. Qato properly applied the Bradford Hill criteria overall. Opp'n at 13–14. This is a red herring. The initial problem is that Dr. Qato is not a medical doctor, cannot prescribe medications, does not have a degree in epidemiology, neither conducts nor interprets animal studies, has no experience with pre-clinical in vitro studies, and has conducted no research regarding montelukast or the blood-brain barrier—yet she opines on biological plausibility, setting forth a complex mechanism of action that she acknowledges is "not fully understood" within the scientific community. *See* Mot. at 5, 17; *see also In re Diet Drugs Prods. Liab. Litig.*, No. MDL-1203, 2000 WL 962545, at *5 (E.D. Pa. June 28, 2008) ("The court notes an initial problem in the qualification of both [doctors]. Neither . . . are medical doctors who have treated patients, yet both proffer opinions regarding . . . causation in humans.").

Said another way, Dr. Qato is not qualified to assess biological plausibility, *i.e.*, "whether the hypothesized causal link is credible in light of what is known from science and medicine about the human body and the potentially offending agent," because she knows nothing about the underlying science and medicine, has a very limited understanding of montelukast, and has never previously addressed a similar situation. *Milward v. Acuity Specialty Prods. Group*, 639 F.3d 11, 25 (1st Cir. 2011). Specifically, there is no dispute that Dr. Qato: (1) is not a clinical pharmacologist; (2) has never been involved in any research, or evaluated any studies, considering whether a substance crosses the blood-brain barrier; (3) has conducted no research related to montelukast or the blood-brain barrier; (4) has no experience treating patients with asthma or neuropsychiatric injuries; and (5) has never analyzed whether a medicine causes an increased risk for neuropsychiatric events. *See generally* Mot. at 2–5, 18–19. Plaintiff does not even attempt to dispute any of these points.

In a nod to her inexperience, Dr. Qato premised her biological plausibility opinion on pre-clinical rat studies, none of which used doses equivalent to human doses, and none of which evaluated effect on behavior. Mot. at 18; Ex. 36 to Vargas Reply Decl., Ronaldson Rpt. at 34 (noting that the rat studies involved a dosage that is at least 9x higher than the standard dose in humans).[10] Even if it was permissible to extrapolate the data on rats to humans, which it is not, Dr. Qato has never previously done that. Her total lack of experience evaluating or analyzing data from animal studies renders her unqualified and her testimony inadmissible. *See* Mot. at 5 and 18–19; *see also In re Onglyza Prods. Liab. Litig.*, 93 F.4th 339, 347 (6th Cir. 2024) (excluding cardiology expert who had no expertise in interpreting animal studies).[11]

In addition, Dr. Qato's biological plausibility opinion is inherently flawed because the underlying mechanism is "not fully understood," and her conclusion is premised on "emerging evidence." Dr. Qato cannot present to the jury a hypothesis under the guise of it being fact. *See, e.g.*, *In re Mirena Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 293 (S.D.N.Y. 2018) ("The 'cleverly buil[t] together . . . plausible working model' that is Dr. Johanson's mechanism opinion is arguably, by his own account, 'speculative' and 'conjectural,' so as, without more, to require exclusion."); *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1041–42 (S.D. Cal. 2021) (excluding expert's general causation testimony where the "unfilled gaps" left much room for speculation and his hypothesis was "more speculative than helpful to a jury"), *aff'd*, 2022 WL 898595 (9th Cir. Mar. 28, 2022); *Porter v. Whitehall Lab'ys, Inc.*, 9 F.3d

---

[10] Plaintiff's Opposition claims that "[n]one of the clinical trials were designed to determine the effect on the human brain, and none were designed to look at neuropsychiatric injuries." Opp'n at 4. However, Plaintiff provided no support for this statement and, in reality, the studies were designed to look at the effect on the entire body, including the central nervous system.

[11] While Dr. Qato has no experience evaluating animal studies, FDA itself evaluated these very same studies prior to approving Singulair. *See* Ex. 37 to Vargas Reply Decl., Pharmacology Review at 9–11.

607, 614-15 (7th Cir. 1993) (affirming exclusion of expert's testimony that ingestion of ibuprofen led to certain injuries where the expert "agreed that his opinion in this case was a 'hypothesis, the proof of which remains to be made'") (citation omitted).

### E. Dr. Qato Did Not Employ a Reliable Methodology to Support Her Recalculation of Merck's Clinical Trial Data.

Dr. Qato's "critiques" of a 2009 meta-analysis that Merck undertook at the direction of FDA, and her conclusion that Merck "manipulated its clinical trial data," (Opp'n at 14), are inadmissible for two reasons: (1) Dr. Qato did not review on-point evidence; and (2) Dr. Qato has no data to support them. First, Dr. Qato's criticisms, as offered in her report, repeatedly reference her confusion over how the meta-analysis was conducted,[12] but Plaintiff does not dispute that Dr. Qato chose not to read the hundreds of pages of communications between FDA and Merck regarding what data to include and the statistical methodology to employ. The answers to the questions she poses were contained in these very communications between Merck and the FDA – which Dr. Qato either was not provided or she chose to ignore. Dr. Qato's failure to review hundreds of pages of relevant, on-point evidence, by itself, warrants the exclusion of her opinions. *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1039 (N.D. Cal. 1999) (excluding expert's proposed testimony and noting that he ignored available information and samples); *Mirena*, 341 F. Supp. 3d at 242 (explaining that when an expert "ignores evidence that is highly relevant to his conclusion," exclusion of the expert's testimony is warranted).

Because Dr. Qato did not review on-point evidence, her criticisms did not provide an intelligible methodology to defend, and thus Plaintiff's Opposition presents Dr.

---

[12] *See* Dkt. 10-4, Mot. Ex. 2, Qato Rpt. at 10 (admitting that: (1) "it is unclear what this second category captures and why these preferred terms . . .were selected for a study"; (2) it is "not clear why Akathisia was the category chosen for restlessness"; and (3) "it is not clear whether 'patients with clinically significant psychiatric illnesses at baseline were excluded because of concerns about the risk of noncompliance with study procedures'").

Qato's opinions not as they are, but as Plaintiff's counsel wishes them to be. *See* Defs.' Obj. to and Mot. to Strike. In doing so, Plaintiff tries to circumvent Dr. Qato's flawed analysis by arguing that when Dr. Qato wrote that it was "unclear" why certain terms were chosen and that it was "not clear" whether certain patients were excluded from the study, Dr. Qato meant to say that aspects of the analysis were "illogical," Merck affirmatively manipulated data, and Merck should have explicitly said that the study excluded particular patients. Opp'n at 6. These opinions are not only untimely, but they are also exactly the sort of *ipse dixit* that is impermissible under FRE 702. *See, e.g.*, *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) ("Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive."). Dr. Qato provides no basis beyond her own "say so" to opine that the statistical analysis plan developed by Merck in concert with the FDA was "illogical." Nor does she identify any basis for her opinion that Merck "manipulated data," as she admittedly had no reason to believe that Merck deviated from this FDA-approved methodology because she did not even attempt to replicate the statistical methodology that FDA asked Merck to employ. Mot. at 12–13.

Dr. Qato's opinion on this issue is further rendered inadmissible because she failed to employ a reliable methodology when she conducted a "basic and quick analysis" that took "no more than five to ten minutes." Opp'n at 14. Plaintiff does not dispute that Dr. Qato had never previously done a meta-analysis of data from multiple clinical trials and does not explain why Dr. Qato chose not to consult with a biostatistician skilled at analyzing data from multiple diverse trials before conducting a "crude" recalculation. Mot. at 4–5.[13] As Plaintiff's Opposition notes, "the term 'crude analysis' … mean[s] a calculation with an unadjusted rate of incidence and odds ratios.'"

---

[13] Plaintiff mentions that Merck used an "outdated Zelen technique," but provides nothing to support that it was outdated, or that it was outdated in 2009 when the study was conducted. Opp'n at 6.

Opp'n at 7. In relying only on unadjusted estimates, however, Dr. Qato failed to "take account of likely confounders" and this is "disqualifying." *Hardeman v. Monsanto*, 997 F.3d 941, 965 (9th Cir. 2021) (quoting *Roundup*, 390 F. Supp. 3d at 1140); *In re Paraquat Prods. Liab. Litig.*, No. 3:21-md-3004-NJR, 2024 WL 1659687, at *32 (S.D. Ill. Apr. 17, 2024) (noting that "failing to take account of likely cofounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern," and excluding expert who "d[id] exactly that").

Defendants demonstrated that Dr. Qato used a results-orientated and litigation-driven "methodology" to critique the meta-analysis. In response, Plaintiff offers the conclusory assurance that even if Dr. Qato "used numbers from a table that she should not have used," and came to a "faulty mathematical conclusion," this is acceptable because "her conclusions are the same regardless[.]" Opp'n at 15. This "close-enough" argument does not reflect a reliable methodology and Dr. Qato's credibility is undermined by the fact that she did not correct her analysis, despite providing an untimely Declaration. Dr. Qato's refusal to review on-point evidence and failure to employ a reliable methodology renders her opinions on this topic unreliable and inadmissible.

### III.   CONCLUSION

As Dr. Qato's labeling and biological plausibility opinions fall outside her area of expertise and she did not employ a scientifically reliable methodology, this Court should exclude her from offering the opinions stated in her report.

DATED: July 22, 2024                                KING & SPALDING LLP

                                                    */s/ Susan V. Vargas*
                                                    Alexander G. Calfo
                                                    Susan V. Vargas
                                                    Attorneys for Defendants
                                                    MERCK & CO., INC.; MERCK SHARP & DOHME CORP.; ORGANON & CO.; and ORGANON LLC